**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA L. WHITE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-2613** |
| | : | |
| **CHARMAINE EDMONDS, LESLIE** | : | |
| **SWINT, JOSE & LINDA & MICHAEL,** | : | |
| **NICETOWN COURT APARTMENTS** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **April 30, 2026**

A disabled tenant presently disputing an eviction action scheduled to be heard in state court in a month or so responds to her eviction action by suing her apartment building and its managers for housing discrimination, interference, retaliation, and harassment against her based on her disability. She also claims slander and assault under Pennsylvania law. She filed this case without the benefit of an attorney and we allowed her leave to proceed without paying the filing fees after confirming she does not have funds to pay the fees. Congress requires we now screen her allegations for merit before issuing summons. We studied her federal claims and liberally construed her alleged conclusory facts. She does not plead facts allowing us to plausibly infer a federal housing discrimination or retaliation claim even when we liberally construe her allegations. We have no basis to proceed on her federal claims and decline to exercise supplemental jurisdiction over the slander and assault claims. We dismiss her complaint but grant her leave to timely amend her allegations as to each person or entity she wishes to sue consistent with this Memorandum.

## I.    Alleged pro se facts

Disabled Philadelphian Donna White rents an apartment from Nicetown Court Housing Partnership. Ms. White lives in a "project based rental assistance voucher" apartment.[1]

At some unidentified time, Leslie Swint, the assistant manager of the apartment building, and Charmaine Edmonds, the manager of the apartment building, prevented Ms. White from consulting with her attorney who represents her in an eviction action in the Philadelphia County Municipal Court, harassed her with police reports, came to her apartment and yelled at her after Ms. White left a message asking to reschedule a court hearing in the eviction action because of an upcoming surgery and called Ms. White a liar, assaulted Ms. White, threatened Ms. White with eviction, and cashed checks and money orders for rent while certifying to the Department of Housing and Urban Development the apartment remained in good working order.[2]

At another unidentified time between 2024 and 2026, Ms. White filed a complaint with the Office of Fair Housing and Equal Opportunity, Department of Housing and Urban Development and filed complaints with the Justice Department at an unidentified time between 2025 and 2026.[3] Ms. White does not identify the nature of the claims asserted or who caused the harm in these complaints. The Office of Fair Housing and Equal Opportunity, Department of Housing and Urban Development sent her a letter at an unidentified time providing her with the right to sue Manager Edmonds and Nicetown Court Housing Partners.[4]

## II.    Analysis

Ms. White pro se sued Manager Edmonds, Assistant Manager Swint, Nicetown Court Housing Partnership, and individuals identified only as "Jose & Linda & Michael" invoking our federal question jurisdiction based on "housing discrimination," retaliation, an undefined "whistleblower" claim, and a state law claim for slander and assault.[5] Ms. White alleges "housing

discrimination" by being "forced" to live in deteriorating housing with a permanent disability, including non-working appliances and refrigerator and non-working ceiling lights.[6] Ms. White alleges she suffered money damages from the cost of spoiled food and the purchase of new lights, bug spray, and a new refrigerator.[7] Ms. White also alleges Philadelphia's Department of Licenses and Inspections documented deficiencies with her apartment but Defendants did not correct the deficiencies.[8] Ms. White seeks money damages in the amount of $79,000.[9]

We granted Ms. White leave to proceed without paying filing fees last week requiring we now screen her complaint consistent with our Congressionally mandated obligations before issuing summons. Congress requires we dismiss all or part of Ms. White's allegations if they are "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief."[10]

When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B), we apply the standard provision found in the Federal Rule of Civil Procedure 12(b)(6).[11] Ms. White must plead enough facts to state a claim for relief plausible on its face under Rule 12(b)(6).[12] We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings."[13] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[14] But "pro se litigants must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules— they must abide by the same rules that apply to all other litigants."[15]

We begin with the Supreme Court's direction in Federal Rule of Civil Procedure 8 requiring Ms. White's complaint contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."[16] Rule 8 requires Ms. White to plead fair notice of "what the . . . claim is and the grounds

3

upon which it rests."[17] Dismissal under Rule 8 is proper when a complaint "left the defendant[] having to guess what of the many things discussed constituted [a cause of action]."[18]

Ms. White makes a variety of allegations we are left to interpret; some allegations refer to Manager Edmonds' and Assistant Manager Swint's harassment, yelling, making police reports, slandering Ms. White, a "rent scam," failure of the landlord to make repairs to the rental property, assault, and attempts to interfere with Ms. White's communications with her attorney in an ongoing landlord-tenant eviction action in Philadelphia. We cannot construe a federal claim arising from the constellation of these alleged facts against private, and not state, actors required to assert a civil rights claim. We, and the alleged property owner/landlord and individual managers, are not required to guess as to the nature of these claims.

### A.   Ms. White does not plead facts allowing us to proceed on a discrimination claim because of disability under the Fair Housing Amendments Act.

Ms. White seemingly hopes to plead one or more of her named parties violated the Fair Housing Amendments Act prohibiting housing discrimination on the basis of her disability.[19] A claim for violations of the Fair Housing Amendments Act may proceed under three theories: (1) intentional discrimination; (2) disparate impact; and (3) claims asserting a defendant refused to make "reasonable accommodations" for a handicapped person.[20] We liberally construe Ms. White's allegations as possibly attempting to allege the building and its Managers intentionally discriminated against her because she is disabled.[21]

To plausibly allege an intentional discrimination, also known as a "disparate treatment" claim, under the Fair Housing Amendments Act, Ms. White must allege facts allowing us to plausibly infer a discriminatory purpose is the motivating factor behind the building and its Managers' challenged acts. Ms. White must allege facts allowing us to plausibly infer the building and its Managers discriminated against her "because of a handicap" or disability and used her

disabled status as the basis for different treatment.[22] Ms. White does not allege facts allowing us to plausibly infer how the building and each Manager discriminated against her because of her disability under the Fair Housing Amendments Act. We allow Ms. White to amend her Complaint to plead a discrimination claim under the Act as to each person she wishes to sue in our limited subject matter jurisdiction.

**B.      Ms. White does not plead interference, retaliation, or harassment under the Fair Housing Amendments Act for complaining to the Office of Fair Housing and Equal Opportunity and Justice Department.**

Ms. White also alleges "retaliation" and "repeated deliberate harassment" by unidentified persons.[23] We fairly infer Ms. White is alleging unidentified persons retaliated against, and harassed, her in an unidentified way after she complained to the Office of Fair Housing and Equal Opportunity within the Department of Housing and Urban Development and to the Justice Department.

Congress through the Fair Housing Act prohibits coercion, intimidation, threats, or interference with "any person in the exercise or enjoyment of, or on account of [her] having exercised or enjoyed, or on account of [her] having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the Fair Housing Amendments Act prohibiting discrimination based on disability.[24] Interference may consist of harassment if it is "sufficiently severe or pervasive" as to create a hostile environment.[25]

Ms. White must allege facts allowing us to plausibly infer (1) she exercised or enjoyed a right granted or protected by [the Act]; (2) the Defendant(s)' conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and Defendant(s)' conduct to plausibly state an interference claim under the Act.[26] Ms. White does not allege facts allowing us to plausibly infer any part of these three elements required to state an interference

claim under the Fair Housing Amendments Act. We allow Ms. White to amend her Complaint to state an interference claim under the Act.

Congress also prohibits "retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority."[27] Ms. White must allege facts allowing us to plausibly infer (1) she engaged in a protected activity; (2) Defendant(s) subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.[28] Even assuming Ms. White's protected activity is filing a complaint with the Office of Fair Housing and Equal Opportunity or the Justice Department, she does not allege what the building or its managers did to subject her to an adverse action. She also does not plead a causal link between her protected activity and the adverse action. We allow Ms. White to amended her Complaint to state a retaliation claim under the Act.

### C.  We decline to exercise supplemental jurisdiction over state law claims.

We enjoy supplemental jurisdiction over state law claims "so related" to federal claims over which we have original jurisdiction forming part of the same "case or controversy under Article III" of the Constitution.[29] But we may decline to exercise supplemental jurisdiction over state law claims, here Ms. White's slander and assault claims, where we dismissed Ms. White's federal claims.[30] We decline to exercise supplemental jurisdiction over Ms. White's state law claims of slander and assault absent a pleaded federal question.[31]

### III.  Conclusion

We cannot determine the federal claims asserted by Ms. White as currently pleaded and are left to guess at her claims. The Supreme Court through Federal Rule of Civil Procedure 8 requires a short and plain statement of our jurisdiction and the claims Ms. White believes entitles her to relief. Ms. White may timely amend her Complaint to allege facts as to the conduct of each

Defendant, including "Jose & Linda & Michael," and the elements of the claims she intends to assert if she can do so in good faith and consistent with this opinion or we will otherwise close this case.

---

[1] ECF 2 at 4, § III.C. Although not clear from the Complaint, we understand Ms. White to allege she is a participant in the Housing Choice Voucher Program, formerly known as "Section 8" housing, administered by the United States Department of Housing and Urban Development providing assistance to low-income families, elderly persons, veterans, and disabled individuals for affordable housing in the private market. *HCV Applicant and Tenant Resources*, HUD.gov, https://www.hud.gov/helping-americans/housing-choice-vouchers-tenants#:~:text=If%20your% 20unit%20fails%20inspection,contact%20your%20local%20housing%20agency [https://perma.cc/DZG8-MAPE].

[2] ECF 2 at 4–5. We take judicial notice of a pending eviction action in Philadelphia Municipal Court brought by Nicetown Court II Housing Partners on June 11, 2025 against Ms. White. *See* Landlord-Tenant Complaint, No. LT-25-06-11-4172. Ms. White opposes the eviction with a hearing scheduled for June 2, 2026 in Philadelphia Municipal Court.

[3] ECF 2 at 5.

[4] *Id.*

[5] Ms. White invokes our federal question jurisdiction based on housing discrimination we interpret as claims asserted under the Fair Housing Act. Congress vests federal district courts with original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ms. White does not allege who "Jose & Linda & Michael" are (beyond their first names) or how the conduct of each of these individuals allegedly caused her harm under the Constitution or federal law. "Jose & Linda & Michael" appear only in the caption and are not identified in the section requiring Ms. White to list all defendants and their conduct. We will allow Ms. White to amend her complaint to assert plausible federal claims against "Jose & Linda & Michael" to the extent she wishes to proceed against them.

[6] ECF 2 at 3–4, §§ II.B, III.C.

[7] *Id.* at 4–5, §§ III.C, IV.

[8] *Id.* at 4, §III.C.

[9] *Id.* at 5, § V. Ms. White also invokes our diversity jurisdiction, alleging she is a United States citizen "Christian" and Defendants collectively, including the Nicetown Court Housing Partnership entity, are United States citizens "Muslim." *Id.* at 4. Congress vests us with diversity jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C.

§ 1332 (a)(1). For purposes of diversity jurisdiction, a "natural person" is a citizen of the state where she is domiciled for purposes of diversity jurisdiction. *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 870 (3d Cir. 2022) (quoting *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). Ms. White does not allege her citizenship or the citizenship of Ms. Edmonds and Ms. Swint.

Ms. White does not allege the citizenship of Nicetown Court Housing Partnership or whether it is a limited liability corporation, partnership, or corporation. The citizenship of a partnership or limited liability corporation "is determined by the citizenship of its members." *Zambelli Fireworks,* 592 F.3d at 420. Where a partnership or limited liability corporation has, as one of its members, another limited liability or partnership, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be" to determine the citizenship of the limited liability corporation or partnership. *Id.* at 420 (citing *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). A corporation is a citizen of both its state of incorporation and the state where it has its principal place of business. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Zambelli Fireworks*, 592 F.3d at 419; *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013) (quoting 28 U.S.C. § 1332(c)(1)). A corporation has one principal place of business and one state of incorporation. To the extent Ms. White intended to invoke our diversity jurisdiction, we will allow her to amend to properly allege her citizenship and the citizenship of each Defendant.

[10] 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

[11] *Elansari v. Univ. of Pa.,* 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling,* 229 F.3d 220, 223 (3d Cir. 2000)). A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading show 'more than a sheer possibility … a defendant has acted unlawfully.'" *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our

Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[12] *Iqbal*, 556 U.S. at 678.

[13] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[14] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339).

[15] *Yogt,* 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[16] Fed. R. Civ. P. 8(a)(1), (2).

[17] *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[18] *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011).

[19] Congress passed the Fair Housing Act as Title VIII of the Civil Rights Act of 1968 prohibiting housing discrimination on the basis of race, gender, and national origin. *Cmty. Servs., Inc. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citing 42 U.S.C. § 3601, *et seq.*). Congress amended the Act in 1988 through the Fair Housing Amendments Act ("FHAA") to prohibit housing discrimination on the basis of disability. 42 U.S.C. § 3604(f)(2). The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of--(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." *Id.*

[20] *431 E. Palisade Avenue Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting *Wind Gap*, 421 F.3d at 176).

9

[21] The second theory, a disparate impact claim, challenges conduct disproportionately burdening disabled persons in violation of section 3604(f) of the Fair Housing Amendments Act. *Mount Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381–82 (3d Cir. 2011). To state a disparate impact claim, Ms. White must allege "(a) an occurrence of certain outwardly neutral practices, (2) which have a significantly adverse or disproportionate impact on members of the protected class." *Butler v. Sundo Capital, LLC*, 559 F. Supp. 3d 452, 456 (W.D. Pa. 2021) (citing *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 467 (3d Cir. 2002)).

The third theory, a reasonable accommodations claim, requires Ms. White to allege she requested an accommodation necessary to allow her as a disabled person an "equal opportunity to use and enjoy a dwelling." *Lloyd v. Preby's Inspired Life*, 251 F. Supp. 3d 891, 899 (E.D. Pa. 2017) (quoting 42 U.S.C. § 3604(f)(3)(B)). In evaluating an accommodation claim, we consider "whether the requested accommodation is (1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing." *Id.* at 898–99 (quoting *Lapid-Laurel*, 248 F.3d at 457).

We do not see a claim under either a disparate impact or reasonable accommodation theory as currently pleaded in Ms. White's Complaint.

[22] *431 E. Palisade Avenue Real Estate*, 977 F.3d at 284–85 (quoting *Wind Gap*, 421 F.3d at 178).

[23] ECF 2 at 3, § II.B.

[24] 42 U.S.C. § 3617.

[25] *Revock v. Cowpet Bay W. Condo. Assoc.*, 853 F.3d 96, 113 (3d Cir. 2017) (citing cases from other Courts of Appeal recognizing a harassment claim in the housing context).

[26] *Rosado v. Whitcraft*, No. 23-3717, 2023 WL 8720137, at *7 (E.D. Pa. Dec. 15, 2023) (quoting *Revock*, 853 F.3d at 112–13).

[27] *Id.* (quoting *Revock*, 853 F.3d at 112); *see also* 24 C.F.R. § 100.400(c)(5), (6) ("Conduct made unlawful under this section includes, but is not limited to, . . . (5) Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act [and] (6) Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority.").

[28] *Rosado*, 2023 WL 8720137 at *7 (quoting *Lloyd*, 251 F. Supp. 3d at 904).

[29] 28 U.S.C. § 1367(a).

[30] 28 U.S.C. § 1367(c)(3).

[31] *Id.*; *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).